[No. 31233.   Department One.   May 25, 1950.]

A. C. Conner, *Respondent,* v. C. W. Zanuzoski *et al.,*
*Appellants.*[1]

[1]Reported in 218 P. (2d) 879.

*James P. Healy,* for appellants.

*Gagliardi, Ursich & Gagliardi,* for respondent.

DONWORTH, J.—This action was brought by an insurance agent against C. W. Zanuzoski and his wife to recover premiums in the sum of $234.67 upon two fire insurance policy renewals which had been paid by the plaintiff. Plaintiff twice had obtained a default judgment against the defendants but each was later set aside and the case finally came to trial June 17, 1949, nearly a year after it was commenced.

On the evening before the trial, the trial judge received a telegram purportedly sent by a doctor in Superior, Wisconsin, to the effect that C. W. Zanuzoski was too ill to travel. This information was relayed to the defendants' counsel who made an oral motion for a continuance at the commencement of the trial the next morning. This motion was denied and the case proceeded to trial before the court sitting without a jury.

At the conclusion of the plaintiff's case, the defendants interposed a challenge to the sufficiency of the evidence and moved for a dismissal of the action. This challenge was denied. After hearing all the testimony presented by the parties, the court rendered an oral decision in favor of the plaintiff, and, after defendants' motion for a new trial had been denied, made its findings of fact in accordance with its decision. Judgment was thereupon granted plaintiff for the amount of the two premiums and the defendants are appealing from that disposition of the case.

At the time of the trial, appellant C. W. Zanuzoski was a resident of Superior, Wisconsin, and had been for many years engaged in the liquor and hotel business there. He had formerly resided in Tacoma but since 1932 he had spent only about two weeks each year there. Appellant Margaret Zanuzoski, his wife, had lived in Tacoma continually for over twenty-two years occupying the home owned by the two appellants. Appellants are not divorced or separated,

but C. W. Zanuzoski has found that he is more successful in his business enterprises in Wisconsin than he would be in this state and so prefers to remain there except for very brief periods each year which he spends in Tacoma.

The evidence shows rather clearly that the real property involved in this case is community property of appellants and that Mrs. Zanuzoski had transacted business in connection with its management since 1932 with the full knowledge and consent of her husband.

In 1944, appellants were the owners of certain real property located on South Tacoma way in Tacoma consisting of a three-story frame building occupied for both mercantile and apartment purposes. In November of that year, they entered into a conditional sale contract for the sale of this property to their two sons, Edward and Richard Zanuzoski, for the sum of $30,000. This contract required the vendees to maintain fire insurance on the building in the amount of $10,000. The only paid-up fire insurance policies covering this property at that time consisted of a $5,000 policy on the building and a $1,000 policy on some store fixtures. These had been written in January, 1944, by respondent and the premiums were promptly paid by appellants. The vendors and vendees prorated these premiums when the contract was executed.

According to respondent's testimony, in August, 1944, at the request of Mrs. Zanuzoski, he wrote two other policies— one for $5,000 upon the building and the other for $1,000 on apartment furniture. These were renewals of two existing policies which expired in August, 1944. Respondent further testified that he mailed these renewal policies to C. W. Zanuzoski in Superior, Wisconsin, and paid the premiums to the insurance company himself, but never received payment from the appellants, although payment had been demanded by him. It is for the recovery of these premiums that respondent brought this action.

The testimony was in direct conflict as to whether or not either of the appellants ordered the insurance represented by the two renewal policies last mentioned. With respect

to the $5,000 policy covering the building, there was testimony that appellant C. W. Zanuzoski had personally instructed respondent prior to August, 1944, to keep the building insured for a total of $10,000 at all times. However, we do not find it necessary to set forth the substance of all the testimony. That produced by each of the parties to the action was sufficient, if believed by the trial court, to support a decision in his or their favor. There being sufficient evidence to support them, the findings of the trial court will not be disturbed by this court.

With this preliminary statement, we will proceed to a consideration of appellants' four assignments of error.

First, appellants contended that their oral motion for continuance made at the beginning of the trial should have been granted. The trial court's reason for its ruling was stated as follows:

"THE COURT: This case was opened and set at this time for trial at your client's request, and I thought at first I would have to continue it, but it looks to me like he isn't trying, he isn't treating you or the Court right to send this [telegram] in at the last minute.

"MR. HEALY: The man intended to fly out here, Your Honor. He was here on the 23rd day of May and he left two days thereafter, and intended to be back for this trial. Now, sickness doesn't wait on the calendar. I haven't seen him, but I have no reason to disbelieve the fact that he was ill, and I don't believe any honorable doctor would send a statement like that to the Court.

"THE COURT: I will proceed to hear the case. There will be no continuance. It has been opened at your client's request and he is not here."

Rem. Rev. Stat., § 322 [P.P.C. § 21-1], provides:

"A motion to continue a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state, upon affidavit, the evidence which he expects to obtain; and if the adverse party admit that such evidence would be given, and that it be considered as actually given on the trial, or offered

and overruled as improper, the trial shall not be continued. The court, upon its allowance of the motion, may impose terms or conditions upon the moving party."

A motion for a continuance not supported by affidavits has been held to be insufficient in view of the statute quoted above. *Lincoln v. Kuskokwim Fishing & Transp. Co.,* 118 Wash. 137, 203 Pac. 62. However, even assuming that the statement of appellants' counsel made at the beginning of the trial can be considered in lieu of an affidavit, we do not feel that the showing made was sufficient to warrant a continuance.

In the case of *Strom v. Toklas,* 78 Wash. 223, 138 Pac. 880, relied upon by appellants, the physician who was treating the absent defendant made an affidavit stating facts showing her serious physical condition and that she left the state upon his advice. Her attorney's affidavit stated facts corroborating the statements of her physician. In the case at bar, C. W. Zanuzoski had been in Tacoma two weeks prior to the trial and left voluntarily for reasons having nothing to do with his state of health. His motion to set aside each of two default judgments had been granted and it was incumbent upon him to make a stronger showing as to his alleged inability to be present at the trial than was done in the *Strom* case.

The present case had been pending for almost a year. Appellant C. W. Zanuzoski had been in rather poor health for some time. When he had visited Tacoma just shortly prior to the trial date no attempt was made even then to take his deposition. This can hardly be said to constitute a showing of due diligence in regard to procuring the testimony of this witness. Under these circumstances, we cannot say that the trial court abused its discretion in refusing to grant a continuance. *State ex rel. Walton v. Superior Court,* 18 Wn. (2d) 810, 140 P. (2d) 554.

Appellants next complain that the trial court erred in permitting the respondent, as an insurance agent, to sue in his own name to recover insurance premiums. They argue that, there being neither pleading nor proof that re-

spondent was subrogated to the rights of the insurance company, their challenge to the evidence should have been sustained. However, the evidence presented at the trial showed that the respondent paid the premiums to the insurance company himself and that, if he had not done so within sixty to ninety days after the renewal date, he would have been personally liable to the company.

This precise contention was raised in *Lamb v. Connor,* 84 Wash. 121, 146 Pac. 174, where this court said:

"It is quite generally held, in fact it seems to be held in all late cases, that an agent who, in discharge of his obligations to his principal, pays the debt of the other contracting party to his principal may be subrogated to the right of the principal to maintain an action.

" 'When an insurance company looks to its general agent for the premiums on insurance written by him, the agent is the owner of the debt, arising by his extending credit for the premiums, so that on payment thereof he is subrogated to all the rights of his principal in the premiums, entitling him to sue therefor. [Citing cases.] No assignment of the premiums is necessary to enable the agent to recover.' "

The same rule may be found in 14 Appleman, Insurance Law and Practice, 288, § 8013, and 44 C. J. S., Insurance, 1340, § 358 (e). Having paid the premiums and being liable to the insurance company in case of nonpayment, respondent may sue in his own name to recover the premiums and an assignment by the insurance company is unnecessary to enable him to do so.

Appellants' third assignment is that the trial court erred in admitting in evidence two letters without any testimony to show the authenticity thereof.

The first letter reads as follows:

"C. W. and R. C. Zanuzoski, Props.           Dial 3711
            "SARATOGA HOTEL
            806 Tower Avenue
            SUPERIOR, WIS.
"Dear Mrs. A. C. Conner:                  March 18, 1947
    "Received your letter of March 8, 1948 and wish to express our deepest sympathy for you and your husband of his misfortune  We hope to hear real soon that he is on road to recovery.  Concerning the *i*surance policy that you issued to

us for 5445 and 5447 South Tacoma Way and for the furniture in the Apartments for the total amount of $234.67 and later transferred to Edward and Richard. The last time that I was in Tacoma, Edward Zanuzoski said that he was going to take care of the bill due you. Now I have also instructed him to pay the bill as soon as possible. Please contact him an[d] inform him that he had promised and I have instructed him to pay the bill. Let me know as soon as possible when he pays you in full.

"Hoping to hear from you real soon and with best wishes, I am

"Yours very truly
C. W. Zanuzoski [Sgd.]
C. W. Zanuzoski"

It will be noted that this letter purported to be in reply to a letter written by Mrs. Conner, respondent's wife, and bore the letterhead of the Saratoga Hotel in Superior, Wisconsin, which is admittedly the name of the hotel run by C. W. Zanuzoski. It was signed "C. W. Zanuzoski" but it was never proven that this was actually the signature of the appellant. Mrs. Conner testified that she wrote to C. W. Zanuzoski concerning the payment of the premiums on the policies and that the letter in question was received in the course of the mails in reply to it. This testimony was in nowise contradicted by appellants.

The rule that letters must be authenticated to be admissible is relaxed in the case of reply letters. In *Anstine v. McWilliams*, 24 Wn. (2d) 230, 163 P. (2d) 816, this court approved the following statement of the rule found in 1 Jones, Commentaries on Evidence (2d ed.) 341, § 201:

"RECEIPT OF REPLY COMMUNICATION.—With respect to a letter received thus in due course of mail and purporting to come from a person to whom a letter has previously been sent and to be in reply thereto, a presumption of fact is indulged in favor of the genuineness of the signature and the letter is admissible in evidence without further authentication; although, in order to obtain the benefit of this presumption, it must first be proven that a letter was written and mailed, to which the letter offered is an answer. The rule that the genuineness of the signature to a reply letter may be assumed applies to a letter signed in typewriting, or

by rubber stamp. The majority of the recent cases also support the rule that where a letter sent in the ordinary course of business is answered by an agent of the individual or corporation addressed, authority of such person is presumed and the reply letter is admissible against the alleged principal without preliminary proof of authority. In a few jurisdictions, however, without expressly repudiating the above rule, the decisions tend to the contrary."

See, also, in regard to this rule, 7 Wigmore on Evidence (5th ed.) 611, § 2153; 20 Am. Jur., 806, Evidence, § 956; and 32 C. J. S., Evidence, 609, § 706 (b).

This same rule is applicable to the second letter admitted in evidence. Respondent's uncontroverted testimony was to the effect that he wrote to O. Keller requesting a receipt showing that the premiums on the insurance policies had been paid by respondent and that he received the letter in issue in reply thereto. Under the authorities above cited, the trial court correctly ruled that the two letters offered by respondent were admissible in evidence.

It should be noted that, even if this second letter should be disregarded entirely, there was sufficient testimony in the record to support the trial court's finding that respondent paid the premiums to the insurance company.

Appellants' final assignment of error is that the trial court erred in entering a judgment against C. W. Zanuzoski and the community composed of appellants C. W. Zanuzoski and Margaret Zanuzoski when the evidence showed that the renewal policies were ordered by appellant wife.

With respect to the premium due on the $5,000 policy, respondent's testimony is undenied that C. W. Zanuzoski personally instructed him prior to August, 1944, to keep the building insured in the total amount of $10,000 at all times. When the existing $5,000 policy on the building expired in August, 1944, respondent accordingly renewed it, the premium being $194.50. Therefore, the $5,000 renewal policy was ordered by appellant husband and both he and the community became liable for the premium.

Furthermore, Mr. Zanuzoski's letter to Mrs. Conner (above quoted) referred to the premiums on both policies

(covering the building and the furniture) totaling $234.67. He did not deny that he had received these policies or that the premiums were due and owing. On the contrary, he admitted in his letter that $234.67 was due to respondent. He merely urged Mrs. Conner to collect this sum from his son Edward, who was purchasing the insured property under conditional sale contract. Mr. Zanuzoski knew when he wrote the letter that the title to the insured property was in the community consisting of his wife and himself, subject to the conditional sale contract. He did not deny liability for the premiums but stated that his son had promised to pay this bill to respondent.

His son Edward testified that he told respondent three months after the issuance of the renewal policies that he would not pay for them. If C. W. Zanuzoski thought he was not liable for these premiums when he wrote the letter he should have expressly so stated at that time. The only inference to be drawn from his conduct is that he recognized his and the community's liability for both premiums, but hoped his son would pay this bill to respondent.

Respondent was not under any obligation to stand by for several years while the father and son each tried to induce the other to pay this bill.

We hold that appellant C. W. Zanuzoski and the community composed of himself and his wife are liable for the premiums charged for both policies involved in this case and that the trial court was correct in entering its judgment, which is hereby affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.